UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANGELA LOUISE W.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CASE NO. 3:22-CV-5722-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION DENYING BENFITS

    Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of his application for Supplemental Security Income disability benefits. Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Rule MJR 13, the parties have consented to proceed before the undersigned.

    After considering the record, the Court concludes the Administrative Law Judge (ALJ) erred when he failed to adequately assess some of the objective medical evidence. As these assessments directly impact the residual functional capacity (RFC) assessment, the ALJ's errors were not harmless and this matter must be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

## I. BACKGROUND

On October 10, 2018, Plaintiff applied for Title XVI Supplemental Security Income alleging disability beginning February 1, 2018 due to mental and physical impairments. Administrative Record (AR) 51, 58. Her claims were denied initially and upon reconsideration. *Id*. She requested a hearing, which was held on May 6, 2021 before an Administrative Law Judge (ALJ), who later denied her claim in a written decision dated August 2, 2021. AR 48-70. Plaintiff timely sought review by the Appeals Council, which denied Plaintiff's request on August 25, 2022. AR 1-7. Thus the ALJ's August 2, 2021 decision became the final decision of the Commissioner by operation of law. *See*, 20 CFR § 416.1481.

## II. STANDARD

Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the Commissioner's decision must be affirmed if it is supported by substantial evidence and free of harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). The Supreme Court describes it as "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotations omitted).

## III. THE ALJ'S FINDINGS

The ALJ found Plaintiff has the severe impairments of: cervical degenerative disc disease; migraine headaches; major depressive disorder; generalized anxiety disorder; and post-traumatic stress disorder (PTSD). AR 54; 20 CFR 416.920(c).

The ALJ determined that Plaintiff had the RFC for light work, as defined in 20 CFR § 416.967(b), with the following additional restrictions: she can occasionally stoop, crawl, and climb ladders, ropes or scaffolds; she can frequently reach overhead bilaterally; she can have occasional exposure to extreme cold, vibrations, light greater than standard office light, noise greater than moderate, and pulmonary irritants; she can perform short, simple instructions for routine, predictable tasks; she can make only simple, work-related decisions with few workplace changes; she can perform work where there are no conveyor belt-paced production requirements and standard work breaks are provided; she can have occasional interaction with the general public and co-workers; she can perform work with a bathroom available. AR 57.

At step five of the sequential evaluation the ALJ concluded that a person of Plaintiff's age, with her education, work experience, and RFC, remained capable of performing jobs that exist in significant numbers in the national economy such as Router, Routing Clerk, and Marker. AR 69; 20 CFR § 404.969.

## IV. DISCUSSION

Plaintiff argues the ALJ's rejection of three of the medical opinions in her record are unsupported by substantial evidence. *See generally*, Dkt. 8. On that basis, Plaintiff asks this Court to remand her claim for further proceedings. *Id*. Defendant maintains the decision denying benefits is supported by substantial evidence, free of legal error, and should be affirmed. *See generally*, Dkt. 9.

The regulations regarding the evaluation of medical opinion evidence were amended for claims filed on or after March 27, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68; *5878-79 (Jan. 18, 2017). Since Plaintiff filed her claim after that date, the revised regulations apply. *See*, 20 C.F.R. §§ 416.1520c and 416.920c.

Under the revised regulations, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) …". 20 C.F.R. §§ 416.1520c(1) and 416.920c(a). Instead, ALJs must consider every medical opinion or prior administrative medical findings in the record and evaluate each opinion's persuasiveness using a list of factors listed. *See*, 20 C.F.R. §§ 416. 1520(c)(a) and 416.920c(a). The two most important factors are the opinion's "supportability" and "consistency." *Id*. ALJs must explain "how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [their] . . . decision." 20 C.F.R. §§ 416.1520c(b)(2) and 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant … objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-2 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)); *see also*, 20 C.F.R. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent … with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (citing 20 C.F.R. § 404.1520c(c)(2)); *see also*, 20 C.F.R. § 416.920c(c)(2).

1. Minsoo Kang, M.D.

On October 14, 2019 Minsoo Kang, M.D (Kang) performed a consultative examination of Plaintiff regarding her complaints of migraine headaches with nausea, light sensitivity, blurred vison, and dizziness. The ALJ made the following observations about that visit:

> The claimant complained of having longstanding problems with headaches. Ex. B17F/5. **She also complained of having moderate headaches daily, as well as severe headaches up to eight times monthly.** Ex. B17F/5. She confirmed that she **had not been taking any abortive medication for her condition**. Ex. B17F/5. During the examination, Dr. Kang observed that the claimant was alert, oriented, and attentive with intact memory and fund of knowledge. Ex. B17F/7. The doctor also observed that her cranial nerves were intact. Ex. B17F/7. The claimant ambulated with a normal gait and demonstrated intact balance. Ex. B17F/7. She exhibited full strength, sensation, and reflexes of the extremities. Ex. B17F/7. The doctor **diagnosed cervicalgia, bilateral occipital neuralgia, and chronic migraine without aura, intractable, with status migrainosus**. Ex. B17F/5. He recommended **lifestyle modifications, including smoking cessation**. Ex. B17F/5. He prescribed erenumab for migraine prevention. Ex. B17F/5.

AR 60 (emphasis added).

Plaintiff attended a follow-up visit with Kang on January 8, 2020, at which she stated her condition remained the same. AR 61. Kang recommended Plaintiff undergo injection therapy. *Id*.

On July 29, 2020 Plaintiff had a follow-up tele-health visit with Kang, reporting significant improvement in her chronic migraines with medication management and occipital nerve block therapy. *Id*.

In an April 2021 statement, Kang opined that Plaintiff suffered from "chronic migraine without aura, with status migrainosus" and stated that she experiences 20 headaches per month. AR 1862-65. Kang further opined that Plaintiff's headaches would require her to take unscheduled breaks, lie down during the workday, be off task 25 percent or more of the workday, and be absent more than four days per month. *Id*. Finally, Kang stated that Plaintiff has mental functioning limitations preventing her from maintaining attention for two-hour segments, working in coordination or proximity to others, accepting instructions or responding appropriately to criticism, and getting along with co-workers and peers. *Id*.

The ALJ found Kang's medical opinion to be unpersuasive, stating that even though he examined Plaintiff he must "necessarily rely to a significant extent on [Plaintiff's] self-report" as

his opinion is inconsistent with the "overall medical evidence of record." AR 67. The ALJ further found that Kang's opinion was "inconsistent with medical evidence showing a significant improvement with consistent medication management and injection therapy." *Id*. The ALJ questioned Kang's diagnosis of "status migrainosus", stating that it means "severe migraines that can last longer than 72 hours" and it was "unclear" how Kang arrived at that diagnosis. *Id*. Finally, the ALJ found Kang's opinion about Plaintiff's "mental restrictions" was "outside the scope of his expertise and not consistent with [Plaintiff's] minimal, inconsistent mental health treatment history" and was also inconsistent with her "unremarkable performance during the consultative psychological examination, as well as her ability to perform activities of daily living independently and socialize with others." *Id*.

Plaintiff insists none of these reasons are legally sufficient. Dkt. 8 at 3-5. She contends the finding that Kang over-relied on Plaintiff's self-report is "nothing more than a naked conclusion" and in any event Kang should be afforded "the weight of her [sic] specialization" as a Neurologist. *Id*. at 3-4. Plaintiff further argues that the ALJ's "uncertainty" regarding Kang's diagnosis "fails to appreciate that Dr. Kang actually diagnosed 'chronic migraine w/o aura w/ status migrainosus.'" *Id*. at 4. Further, Plaintiff argues that Kang "obviously" accounted for Plaintiff's improvements as Kang was the only physician treating her migraines. *Id*. Finally, Plaintiff argues Kang's opinions are not inconsistent with her daily activities because he said she was capable of "low stress work" with lots of breaks and at least four days off per month. *Id*. at 5.

Defendant disagrees, contending the ALJ was correct that Kang's opinion was not supported by his own findings, because as the ALJ stated, those findings indicated intact gait, balance, coordination, cognitive functioning, and neurological functioning of the extremities.

Dkt. 9 at 4; AR 67. According to Defendant, Plaintiff's argument that her nausea, vomiting, and vertigo were more important "findings" than these "normal" or "benign" findings is easily discredited by the fact these are all self-reported symptoms not observed by Kang. Dkt. 9 at 4. In addition, Defendant points out that the ALJ found Kang's endorsement of "mental restrictions" was beyond Kang's expertise, further bolstering the conclusion that Kang over-relied upon Plaintiff's self-reporting. Dkt. 9 at 4. Finally, Defendant asserts that the ALJ reasonably questioned Kang's diagnosis of "status migrainosus" because the record does not document 72-hour headaches, suggesting Kang likely credited Plaintiff's unreliable testimony to arrive at such a conclusion. *Id*. Finally, regarding the ALJ's finding that Kang's opinion was inconsistent with the overall medical record, Defendant argues that indeed, it was inconsistent with evidence showing significant improvement in migraines with consistent medication management and injection therapy. Dkt. 9 at 4-5; AR 308, 1065, 1469, 1563-64, 1864.

While the Court does not find all of Plaintiff's arguments persuasive, and recognizes Defendant's position that the ALJ did address supportability and consistency, as the revised regulations require, the Court finds that the ALJ failed to point to substantial evidence upon which to discredit Kang. It is not enough for the ALJ to simply state that some evidence is inconsistent with a medical source's opinion, or that the opinion is not internally supported. The ALJ must build an "'accurate and logical bridge" from, in this case, the "overall medical evidence of record" the ALJ said was inconsistent with Kang's opinion, and the ALJ's conclusion that Kang relied on Plaintiff's self-reporting. *See*, *Micheal D. v. Comm'r of Soc. Sec*., Case No. 2:22-CV-464-DWC, 2022 WL 4377400, at *3 (W.D. Wash. Sept. 22, 2022).

Here, the ALJ does not cite to a single medical record to support his conclusion that Kang simply credited Plaintiff's subjective reporting to diagnose her, making it impossible for this Court to assess the validity of such a finding. Moreover, the ALJ's finding that Kang's opinion was inconsistent with the record that her headaches were significantly improved with "consistent medication management and injection therapy" is similarly untethered to any citations or further explanation.

Additionally problematic is the ALJ's expressed confusion regarding how Kang arrived at his diagnosis of "status migainosus". The ALJ had a duty to develop the record to resolve this ambiguity to allow for proper evaluation of Kang's opinion. *See e.g.*, *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry."). Instead, he simply rejected it as "unclear".

In sum, the Court finds the ALJ's rejection of Kang's opinion was not supported by substantial evidence.

2. Myrna Palasi, M.D.

In September 2018 Myrna Palasi, M.D. (Palasi) reviewed medical evidence presented to her by the Department of Social and Health Services, from which she concluded that Plaintiff was limited to sedentary work with marked environmental, postural, and manipulative restrictions such that she was unable to sustain a 40-hour work week. AR 465.

The ALJ discredited Palasi's opinion, stating that it was "inconsistent with the overall medical evidence of record" and "inconsistent with [Plaintiff's] minimal treatment for neck pain" and with "subsequent medical evidence showing an improvement in [Plaintiff's] migraines with consistent medical management and injection therapy." AR 64. The ALJ also pointed to consistent examination findings showing Plaintiff had intact gait, balance, coordination,

cognitive functioning, and neurological functioning of the extremities. *Id*. at 64-65. Finally, the ALJ found that Plaintiff's activities of daily living and under-the-table work as an on-site apartment manager during the period at issue further undermined Palasi's opinion. AR 65.

Plaintiff argues these reasons are legally insufficient. Dkt. 8 at 5-7. According to Plaintiff "the ALJ's rationale of minimal treatment and improvement due to treatment" is inconsistent, and therefore not a clear and convincing reason to discredit Palasi. *Id*. at 5-6. Plaintiff also argues Palasi relied on an abnormal cervical spine MRI, Plaintiff's "formal diagnosis of migraine", and the fact Plaintiff underwent Toradol injections to formulate her opinion. *Id*. at 6. Finally, Plaintiff insists the ALJ "failed to explain" why he concluded Palasi's opinion was inconsistent with Plaintiff's activities of daily living. *Id*. at 7.

Defendant disagrees, arguing the ALJ was correct that the evidence Palasi reviewed reflected benign findings showing intact gait, balance, coordination, cognitive functioning, and neurological functioning of the extremities. Dkt. 9 at 5; AR 736-41. Defendant also insists Palasi's opinion was "conclusory" insofar as stating someone is unable to sustain a 40-hour workweek is not functionally specific. *Id*. And Defendant argues the ALJ was correct that Palasi's opinion is wholly inconsistent with Plaintiff's minimal neck pain treatment, improvement with consistent migraine medication management and injection therapy, Plaintiff's activities of daily living, and Plaintiff's under-the-table work during the relevant period. Dkt. 9 at 5-6; AR 308, 748, 768, 1065, 1469, 1563-64, 1864.

The Court finds that as with Kang's opinion, above, the ALJ failed to build an "'accurate and logical bridge" between the "overall medical evidence of record" and his finding that Palasi's opinion was inconsistent with it. Just as he did with Kang's opinion, here the ALJ failed to cite to a single medical record that was actually inconsistent with Palasi's opinion as of the

time she provided it (which was notably almost two years before Plaintiff underwent nerve block injections), thereby precluding meaningful review by this Court of the ALJ's reasoning.

In sum, the Court finds the ALJ's assessment of Palasi's opinion was unsupported by substantial evidence.

3. Beth Liu, M.D.

On April 12, 2019 Beth Liu, M.D. (Liu) performed a consultative medical examination of Plaintiff. AR 736-741. Liu opined that Plaintiff could perform "light level work" and could "sit for 40 minutes at time and four hours total, stand for 30 minutes at a time and two to three hours total, and walk for 20 minutes at a time and one to two hours total in an eight-hour workday." AR 66, 739. In addition, Liu opined that Plaintiff could occasionally perform postural movements, could frequently use her hands for most hand activities, and that she had environmental limitations of unprotected heights and moving mechanical parts. *Id*.

The ALJ found Liu's opinion unpersuasive, reasoning that it was unsupported by her own examination which yielded benign results, and inconsistent with the "overall medical evidence of record" including Plaintiff's improvement and minimal treatment for her neck, improvement with consistent migraine medication management and injection therapy, activities of daily living, and under-the-table work during the relevant period. AR 66.

Here again, Plaintiff argues that none of the ALJ's reasons are legally sufficient. Dkt. 8 at 7-9. Plaintiff claims Liu did not rely on "normal findings" to form her opinion, so lack of supportability was not a sufficient reason for the ALJ to discredit Liu. *Id*. at 7. Plaintiff further contends the ALJ's finding that Plaintiff engaged in minimal treatment and improvement with migraine treatment are not reasons to discount Liu's opinion because "Liu's medical opinion was that treatment for neck pain was not going to be effective" and because "Liu did not base her

medical opinions in question on [Plaintiff's] migraines." Dkt. 10 at 4-5. Finally, Plaintiff states that the "ALJ's reliance on inconsistency in daily activities fails to pass muster." *Id*. at 5.

Defendant contends the ALJ was correct to find Liu's opinion unsupported by her own examination findings of intact gait, balance, coordination, cognitive functioning, and neurological functioning of Plaintiff's extremities, as well as Plaintiff's intact fine and gross manipulation during the examination. Dkt. 9 at 6.; AR 66, 736-741. Defendant further contends the ALJ was correct to find Liu's opinion to be inconsistent with the overall medical evidence, including other benign examinations, minimal treatment for neck pain and improvement with consistent migraine medication management and injection therapy. Dkt. 9 at 6; AR 66, 308, 748, 768, 1065, 1469, 1563-1564, 1864. And finally, Defendant again asserts that the ALJ correctly concluded that Liu's opinion was at odds with Plaintiff's ability to live independently and work under-the-table as an on-site apartment manager. *Id*. at 6-7.

The Court finds the ALJ's assessment of Liu's opinion to be unsupported by substantial evidence. As with his assessment of Kang and Palasi's opinions, above, the ALJ again fails to explain what specific evidence undermined what specific functional opinion made by Liu. Untethered references to the "overall medical record" are insufficient for this Court to meaningfully review whether the ALJ's conclusion is supported by substantial evidence.

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or if is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner Social Security Admin*., 454 F.3d 1050, 1055 (9th Cir. 2006). The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do

not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)).

Here, the ALJ's deficiencies in the assessment of the medical evidence, as discussed above, preclude this Court from meaningfully determining whether the ALJ's denial of Plaintiff's claim was supported by substantial evidence. For instance, if the ALJ had credited Kang, Palasi, or Liu's opinion(s) he may have included far more restrictive limitations in Plaintiff's RFC. Accordingly, these errors were not harmless. *See*, *Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1098 (9th Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995))("We will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'").

Consequently, this matter must be reversed and remanded for reevaluation of the three medical opinions discussed herein, and reassessment of the five-step sequential evaluation.

## V. CONCLUSION

For the foregoing reasons, the Court finds the ALJ improperly concluded that Plaintiff was not disabled. Accordingly, this matter is REVERSED and REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

Dated this 24th day of April, 2023.

David W. Christel
Chief United States Magistrate Judge